IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 04-cv-02431-LTB-PAC

NABEEL FAIZI,

    Plaintiff,

v.

EXPO DESIGN CENTER, a Division of Home Depot, and HOME DEPOT USA,

    Defendants.

_____

ORDER
_____

The plaintiff Nabeel Faizi, after ten years of service and promotion to the rank of Assistant Manager, lost his job with the defendant Expo Design Center ("Expo"), a subsidiary of the defendant Home Depot USA ("Home Depot"), after an investigation into the violation of a safety rule. The parties have filed cross motions for summary judgment. The motions are adequately briefed and oral argument would not materially aid their resolution. For the reasons stated below, I DENY Mr. Faizi's motion and GRANT the defendants' motion.

**I. Facts**

The facts, undisputed except where otherwise noted, are these. Mr. Faizi, born in Afghanistan on November 17, 1962 and later naturalized an American citizen, began working as an associate for Home Depot in October, 1993 at a store in California. In 1995, Mr. Faizi transferred to a store in Colorado, where he received a promotion to head of the kitchen and bath department. In 2001, Mr. Faizi transferred to an Expo store, attaining the status of Assistant

Manager under the supervision of Manager Lawrence Foerster. Throughout, his employment was at will and he acknowledges that the defendants promised him no definite period of employment. Mr. Faizi's skills and diligence proved invaluable, and praises rained down upon him from all quarters. Effusive remarks adorned his performance reviews and customers wrote to his superiors specifically to commend his services.

After the terrorist attacks of September 11, 2001, Mr. Faizi learned that some subordinates had expressed verbal caricatures of persons of Arab descent. These comments were not made in Mr. Faizi's presence – he has no reason to believe that the wisecracks were directed at him – and he took no disciplinary action. Mr. Foerster occasionally referred to Afghani co-workers as Mr. Faizi's "countrymen." Though Mr. Faizi would have preferred that Mr. Foerster use the associates' names, he concedes that the descriptor is accurate. Once, three women subordinate to Mr. Faizi asked him why he was not wearing a turban. Contrary to a policy requiring management personnel to report discriminatory remarks, Mr. Faizi did not report any of these incidents to his superiors. He did not make use of a toll-free telephone number established for Home Depot employees anonymously to report harassment, nor did he confront the putative offenders.

In November, 2002, a female subordinate complained that Mr. Faizi had directed sexually-suggestive comments toward her. Mr. Faizi denied the allegations. Susan Purcell, who oversaw human resource matters for stores within the geographic division, issued to Mr. Faizi a written warning, which informed that similar behavior in the future would result in disciplinary action, possibly termination.

On the afternoon of January 1, 2003, Mr. Faizi discovered – its origin had not previously

2

been disclosed to him – a model display of a bath showroom set upon a pallet of above-average length and shrink-wrapped. The display impeded customers' access to Expo's products and, before leaving the store, Mr. Faizi instructed Dan Rouch, who managed the responsive department, to remove the obstacle to the receiving room. When, upon arriving the next morning, Mr. Faizi found the model still ensconced, he enlisted the assistance of Brendan Davis, then an Expo associate subordinate to Mr. Faizi. The pallet presented a conundrum: approached from the end, it was too long to respond to the forks of a lift truck; approached from the side, it presented openings too distant to admit the forks, expanded to their extreme range.

Next began a series of events about which some dispute prevails. Mr. Faizi and Mr. Davis, each a protagonist in his version, differ in the following. According to Mr. Faizi, Mr. Davis managed to move the display to the receiving room by machinations about which Mr. Faizi could only speculate; Mr. Faizi testified that a pallet jack inserted into one end of the pallet might enable a man to drag the display along the floor. Desiring to lift the object onto a storage rack some fifteen feet above the floor, Mr. Davis then sought Mr. Faizi, who, with Mr. Davis' help, managed to force the forks of a lift truck under the side of the pallet and lift the package onto the rack. Extracting the forks from under the stored display by normal methods proved impossible and Mr. Faizi claims to have gone looking for a ladder. When he returned, Mr. Davis was standing on the rack, having climbed up the side, and had solved the puzzle. Mr. Faizi did not conjecture how Mr. Davis simultaneously lifted the display and moved the fork truck. He claims to have insisted that Mr. Davis climb down immediately. Mr. Davis complied, but purportedly denied knowledge that he had violated any company rules. Mr. Faizi, concluding that Mr. Davis had not properly been trained, decided not to discipline him.

According to Mr. Davis, Mr. Faizi removed the display to the receiving room by lift truck before seeking Mr. Davis' assistance. Mr. Davis could not have done so because he was not at that time trained or licensed to operate pallet-moving equipment. (This Mr. Faizi does not dispute.) Mr. Faizi instructed Mr. Davis to climb onto the rack and push the display while Mr. Faizi reversed the lift truck, thus extracting the forks. Mr. Davis had then been working at Expo only a few weeks. Though he knew climbing on storage racks constituted a violation of Expo's safety code, he dared not disobey the order of an assistant store manager. He asserts that Mr. Faizi made no mention of any safety infraction at that time.

In either event, the defendants were unimpressed by the ingenuity of Messrs. Faizi and Davis. After demanding of Mr. Davis how the display arrived at so lofty a perch, the human resources department commenced an investigation. Chris Jeffrey, the store's human resources manager, obtained a written statement from Mr. Davis. On January 8, 2003, Mr. Jeffrey solicited Mr. Faizi's version of events. He claims to have then instructed Mr. Faizi not to talk to anyone about the investigation or the underlying event, a claim Mr. Faizi disputes. It is undisputed that Mr. Faizi next sought and found Mr. Davis and inquired how Mr. Jeffrey had learned of the rack-climbing incident.

Here again, the narrations diverge. According to Mr. Faizi, he told Mr. Davis to tell the truth about the incident. He warned that Mr. Davis would likely be disciplined when the investigation was completed.

According to Mr. Davis, Mr. Faizi scolded him for recounting the event and warned that he would be terminated as a result. Mr. Faizi educated Mr. Davis in his own version of events – Mr. Davis had voluntarily climbed the rack before Mr. Faizi was able to respond – and instructed

him to recount that narrative in the future.  Mr. Davis, who believed his job to be in jeopardy, immediately reported this exchange to the head of his department, who reported up the chain to Mr. Jeffrey.  At this time, Mr. Jeffrey determined to place Mr. Faizi on administrative leave, and did so the next morning, January 9, 2003.  Ms. Purcell later communicated to Mr. Jeffrey the defendants' decision to fire Mr. Faizi.

The defendants' agents proffer plural justifications for Mr. Faizi's discharge.  Mr. Foerster, who had no part in the decision, believes that the defendants fired Mr. Faizi for retaliating against Mr. Davis during their January 8, 2003 conversation.  Mr. Jeffrey also believes that Mr. Faizi's prohibited pursuit of Mr. Davis warranted disciplinary action.  Alternatively, both Mr. Jeffrey and Ms. Purcell indicate that Mr. Faizi's safety violation resulted in the loss of his job.  The defendants committed themselves to this position on paper; the notice of Mr. Faizi's termination gives as reason a "safety violation."

Ms. Purcell, with whom the decision to terminate rested, testified in deposition that she saw in Mr. Faizi's behavior a pattern of abuse of power, beginning with his alleged sexual innuendo in November, 2002.  As between the competing iterations of the events of January 2, 2003, Ms. Purcell found Mr. Davis' recounting more credible.  Mr. Faizi was not disciplined on the strength of Mr. Davis' veracity alone; assuming Mr. Faizi's statements to be true, Mr. Faizi should have fired Mr. Davis and his failure to do so constituted a distinct offense.  However, in that hypothetical circumstance, the defendants might have meted out against Mr. Faizi some discipline short of termination.  Though Mr. Faizi disputes his complicity in Mr. Davis' ascension of the storage rack, he disputes neither that the action constituted a breach of the defendants' safety code nor that he was responsible, as Mr. Davis' superior, for enforcing compliance.

5

**II. Discussion**

Mr. Faizi presses claims for race-based harassment, race-based discrimination, breach of contract, promissory estoppel, intentional infliction of emotional distress, and breach of implied contract. He moves for summary judgment on the contract and estoppel claims. The defendants move for summary judgment on all of the claims.

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule

56©, except the pleadings themselves." *Celotex* at 324.

### A. Harassment claim

Mr. Foerster's references to Mr. Faizi's "countrymen" do not alone suggest animosity or pernicious effect. Mr. Faizi conceded in deposition that he never made his superiors aware of the purportedly offensive comments of his subordinates. The parties do not dispute that the defendants had promulgated a policy prohibiting racial- and national-origin-based harassment. Nor do they dispute that the defendants made available to Mr. Faizi and other employees telephone operators to whom they might report harassment; Mr. Faizi never made use of this service.

"An employer is only obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care should have known." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir.1998). Because Mr. Faizi failed to report the alleged harassment, the defendants can be held constructively to have known of it only if the acts of harassment were so "egregious, numerous, and concentrated as to add up to a campaign of harassment." *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000). Nothing in the record raises a fact question implicating constructive knowledge.

### B. Discrimination claim

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

7

42 U.S.C. § 2000e-2(a). A claimant may prove a violation of Title VII either with direct evidence or by successfully navigating the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Mr. Faizi has presented no direct evidence of discrimination.

The claimant under *McDonnell Douglas* carries the initial burden of making a *prima facie* showing that he was (1) within the protected class; (2) doing satisfactory work and otherwise qualified for the position; (3) discharged or adversely affected by the defendant's employment decision; and (4) his job was not eliminated after his discharge. *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). The parties do not dispute that Mr. Faizi has made this showing.

The defendants must next articulate, and support with some evidence, a legitimate, nondiscriminatory reason for the discharge. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997). If the defendants meet this burden, Mr. Faizi must then present evidence raising a genuine issue that his termination was the result of his membership in the protected class or that the reason offered by the defendant was a mere pretext. *Id*.

The defendants justify Mr. Faizi's termination on the ground of the alleged safety code infraction. They do not here argue that Mr. Faizi lost his job because he accosted Mr. Davis. They cannot ground the termination on Mr. Faizi's failure to discipline Mr. Davis; Ms. Purcell equivocated on the sufficiency of this justification. Nevertheless, violation of a safety rule is sufficient ground for termination and the defendants were entitled to credit Mr. Davis' account of the January 2, 2003 incident; I take the facts as they appeared to Ms. Purcell and Mr. Jeffrey. *Kendrick*, 220 F.3d at 1231. The dispute between Mr. Faizi and Mr. Davis does not amount to a

factual dispute material to the disposition of this claim. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).

Mr. Faizi looks for evidence of pretext in Mr. Davis' continued employment with the defendants. To succeed in his assertion of disparate treatment, Mr. Faizi must show that he was treated differently than another similarly-situated employee who violated a work rule of comparable seriousness. *Aramburu*, 112 F.3d at 1404. Similarly-situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. *Id*; *Rivera v. City and County of Denver*, 365 F.3d 912, 922 (10th Cir. 2004). Mr. Davis does not satisfy these criteria; he answered to Mr. Faizi and, according to Ms. Purcell, his subservience was excusable. *Watts v. City of Norman*, 270 F.3d 1288, 1294 (10th Cir. 2001), *cert. denied*, 535 U.S. 1055, 122 S. Ct. 1912, 152 L. Ed. 2d 822 (2002).

Mr. Faizi sees evidence of pretext in Mr. Foerster's purported discriminatory animus. However, no such antipathy appears in the record and Mr. Foerster did not, in any event, participate in the decision to fire Mr. Faizi. Contrary to Mr. Faizi's assertion, nothing in the record indicates that Ms. Purcell or Mr. Jeffrey countenanced, much less engaged in, discriminatory or hostile behavior.

Mr. Faizi complains that the investigation into the January 2, 2003 incident was insufficiently thorough. He suggests that Mr. Jeffrey and Ms. Purcell should have taken steps to verify his alleged accosting of Mr. Davis. In fact, contrary to his suggestion, he submitted a written statement about that incident, which did not, in any event, bear upon the justification tendered here. Though he faults Ms. Purcell for not personally inspecting the site of the safety infraction, any such failure does not demonstrate pretext. My role is "not to act as a super

personnel department that second guesses employers' business judgments." *Kendrick*, 220 F.3d at 1233.  Though Mr. Faizi perceived many Expo associates, including Mr. Davis, as insufficiently trained, he does not suggest how that fact might cast doubt upon the defendants' proffered justification for his termination.

Finally, Mr. Faizi suggests that the defendants failed to follow their own rules.  As demonstration, he reiterates Mr. Davis' continued employment.  This argument is merely an assertion of disparate treatment, already refuted, in another guise.

### C.     Breach of contract and breach of implied contract

Mr. Faizi concedes that his employment was at will.  Indeed, Home Depot's employment policy, which Mr. Faizi read, is headlined "Employment at will policy" and provides,

> As an associate of Home Depot, your employment is for no specific period of time, and you have the right to terminate your employment at any time, at your convenience, with or without cause or reason.  Home Depot has the same right.  This status can only be modified if the modification is stated in writing in a document that is signed by both you and the CEO or Division President of the Company.

Mr. Faizi's further admission in deposition that he was promised no period of employment further establishes the absence of any triable issue of fact concerning his express contract claim.

Mr. Faizi argues that the defendants' prohibitions against harassment and discrimination, published to him, constituted a particular, implied promise to provide an atmosphere free from discriminatory conduct.  No such promise appears in the record and Mr. Faizi does not point to any language in the defendants' promulgated policies that might constitute an enforceable promise.  His two attempts are unavailing.

First, Mr. Faizi cites the preamble to Home Depot's policy, which states,

> Home Depot is committed to ensuring that our associates work in an environment of

10

mutual respect, free of harassment and discrimination. Home Depot does not tolerate harassment or discrimination of associates, customers, or vendors on the basis of race, sex, color, age, religion, national origin, disability, sexual orientation, or any characteristic protected by applicable law.

This declaration, while admirable, is a vague assurance, too indefinite to constitute an enforceable promise. *Dupree v. United Parcel Service, Inc.*, 956 F.2d 219, 222 (10th Cir. 1992); *Soderlun v. Public Service Co. of Colorado*, 944 P.2d 616, 621 (Colo. Ct. App. 1997), *cert. denied*, (1997). This provision does not place any substantive restrictions on the defendants' ability to terminate their at-will employees. *Vice v. Conoco, Inc.*, 150 F.3d 1286, 1289 (10th Cir. 1998). Nor does it contain express or implied benchmarks by which performance might be measured.

Second, Mr. Faizi points out that none of Expo's managers reported his subordinates' comments, in purported contravention of a policy that provides,

> [I]f you are a manager at Home Depot and you receive a complaint, become aware of, or even suspect a violation of the Company's harassment/discrimination policy, you have a responsibility to consult promptly with a member of Human Resource Management for a proposed course of action.

Assuming, without deciding, that this language might constitute an enforceable promise, any breach of it was occasioned by Mr. Faizi's conduct; he alone among Expo management knew of, and had an obligation to report, the offensive remarks. It is axiomatic that Mr. Faizi cannot hold the defendants liable for any non-performance that he caused. *American Indus. Leasing Co. v. Costello*, 418 P.2d 881, 886 (Colo. 1966).

### D. Promissory estoppel

Mr. Faizi's promissory estoppel claim fails for at least three reasons. First, as explained above, he can identify no enforceable promise and in fact testified that none were made. *Soderlun*, 944 P.2d at 620. Second, he does not dispute that he read the defendants' written disclaimer explaining that his employment was at will. *Demarah v. Texaco Group, Inc.*, 88 F. Supp. 2d 1150, 1158 (D. Colo. 2000). Third, he does not argue, and provides no evidence, that he relied on any promise to his detriment.

### E. Infliction of emotional distress

Mr. Faizi does not contest, and thus concedes, the defendants' argument, supported by authority, that his emotional distress claim is barred by Colorado's workman's compensation act and that he failed to establish the elements of the claim.

Accordingly, it is ORDERED that

1) Mr. Faizi's motion for summary judgment is DENIED;

2) the defendants' motion for summary judgment is GRANTED; and

3) judgment shall enter in the defendants' favor on all claims with costs.

Dated: February __23__, 2006, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge